E-FILED
Tuesday, 17 June, 2025 08:54:51 PM
Clerk, U.S. District Court, ILCD


**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

MARCUS CRAIG,

Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC.,

BRITTANY GREENE, CATHY ASHCRAFT,

and ADA COORDINATOR KESTNER,

In their official capacities,

Defendants.

Case No. 3:23-cv-03343-DJQ

Honorable Eric I. Long

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56.1(b)(3)**

NOW COMES, Plaintiff Marcus Craig, by and through his undersigned counsel, hereby submits this Response to Defendants' Motion for Summary Judgment pursuant to Local Rule 56.1(b)(3) of the United States District Court for the Central District of Illinois. For the reasons set forth below, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment.

## I. RESPONSE TO DEFENDANTS STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1(b)(3)(A), Plaintiff responds to Defendants' Statement of Undisputed Material Facts (UMF) as follows:

1. **UMF 1**: Plaintiff was incarcerated at Western Illinois Correctional Center between June 22, 2022, and August 16, 2023. [Active Living Unit History, attached as Exhibit A, Bates 000423-000425].
   **Response**: Admitted.

1.

2. **UMF 2**: Defendant Brittany Greene was the warden of Western Illinois Correctional Center during the relevant time period. [Declaration of Brittany Greene, attached as Exhibit F, ¶ 1].
   **Response**: Admitted.

3. **UMF 3**: Defendant Ashcraft was the Healthcare Unit Administrator ("HCUA") at Western Illinois Correctional Center during the relevant time period. Defendant Ashcraft served as ADA coordinator for part of the relevant time period ending on approximately February 27, 2023. [Declaration of Kathy Ashcraft, attached as Exhibit G, ¶¶ 1, 2].
   **Response**: Admitted.
4. **UMF 4**: Defendant Kindel Kestner was the ADA Coordinator at Western Illinois Correctional Center starting on February 27, 2023, and continuing during part of the relevant time period. [Declaration of Kindel Kestner, attached as Exhibit H, ¶ 1].
   **Response**: Admitted.
5. **UMF 5**: Plaintiff is one-hundred percent deaf in his left ear and between seventy and eighty percent deaf in his right ear. [Deposition of Marcus Craig, attached as Exhibit B, p. 25:6-7].
   **Response**: Admitted.
6. **UMF 6**: Without hearing aids, Plaintiff couldn't hear important things such as instructions from officers and calls for movement such as to go to gym, yard, meals, or law library. [Exhibit B, pp. 26:16-27:25].
   **Response**: Admitted.
7. **UMF 7**: Plaintiff arrived at Western Illinois Correctional Center with a hearing aid, but it was broken. [Exhibit B, pp. 48:20-50:8].
   **Response**: Admitted.
8. **UMF 8**: In October 2022, Plaintiff wrote two grievances, received by the facility on October 4 and 7, 2022, regarding his being hard of hearing and needing accommodations. [Grievance Log, attached as Exhibit C, Bates 000368].
   **Response**: Admitted.
9. **UMF 9**: Plaintiff alleges that on October 6, 2022, he sent letters to Defendants Greene and Ashcraft requesting accommodations for his hearing disability. [Letters dated October 6, 2022, attached as Exhibit D, Bates 000395-000396].
   **Response**: Admitted that Plaintiff sent letters to Defendants Greene and Ashcraft on October 6, 2022, requesting accommodations. Disputed that there is no evidence these letters were received, as the letters were submitted to the Administrative Review Board, suggesting they were part of the facility's grievance process. [Exhibit D, Bates 000395-000396].
10. **UMF 10**: On November 1, 2022, Plaintiff completed a communication plan. [Exhibit B, p. 43:1-9; Plaintiff's Medical Records, attached as Exhibit E, Bates 000039].
   **Response**: Admitted.
11. **UMF 11**: The same day, Plaintiff was given an MMCall vibrating watch. [Exhibit B, p. 44:10-13; Exhibit E, Bates 000043].
   **Response**: Admitted.
12. **UMF 12**: Because Plaintiff was able to complete a communication plan on November 1, 2022, the two grievances he filed in October 2022 were denied as moot. [Exhibit B, pp. 57:18-60:11; Exhibit C, Bates 000368].
   **Response**: Disputed. The grievances were denied as moot, but Plaintiff contends this was improper because the communication plan and vibrating watch did not fully address his need for functional hearing aids to mitigate his severe hearing loss. [Exhibit B, pp. 57:18-60:11].
13. **UMF 13**: The vibrating watch helped Plaintiff with his issue of missing calls for movement. [Exhibit B, pp. 67:22-68:4].
   **Response**: Admitted that the vibrating watch helped with missing calls for movement, but disputed that this fully resolved Plaintiff's issues, as he still could not hear

instructions or engage in normal communication without functional hearing aids. [Exhibit B, pp. 26:16-27:25].

14. **UMF 14**: On November 12, 2022, Plaintiff was issued Koss CL/20 Headphones. [Exhibit B, p. 44:13-15; Exhibit E, Bates 000045].

    **Response**: Admitted.

15. **UMF 15**: On November 29, 2022, Plaintiff was seen by the audiologist who attempted to repair Plaintiff's broken hearing aid. [Exhibit B, p. 49:1-12; Exhibit E, Bates 000044].

    **Response**: Admitted.

16. **UMF 16**: The audiologist recommended a hearing evaluation for new hearing aid(s). [Exhibit E, Bates 000044, 000048].

    **Response**: Admitted.

17. **UMF 17**: Plaintiff had a hearing evaluation on February 21, 2023. [Exhibit B, p. 54:15-17; Exhibit E, Bates 000056-000056].

    **Response**: Disputed. While a recommendation for a hearing aids evaluation may have been given on February 21, 2023, the actual evaluation was not conducted until February 23, 2023.

18. **UMF 18**: There is no evidence Plaintiff's October 6, 2022, letter was received or reviewed by the Warden or the Warden's office. [Exhibit F, ¶ 9, 10].

    **Response**: Disputed. Plaintiff sent letters to Defendant Greene, and these letters were submitted to the Administrative Review Board, suggesting they were received and processed within the facility's system. [Exhibit D, Bates 000395-000396].

19. **UMF 19**: Defendant Greene delegates to and relies on others within the warden's office to read and reply to inmate correspondence. [Exhibit F, ¶ 8].

    **Response**: Plaintiff does not possess sufficient knowledge to know how Defendant Greene conducts her day to day tasks, but disputes its legal significance. Delegation does not absolve Defendant Greene of responsibility if her subordinates failed to act on Plaintiff's requests, as she remains responsible for ensuring constitutional violations are addressed. [See *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996); See also *Gentry v. Duckworth*,65 F.3d 555, 561 (7th Cir.1995)].

20. **UMF 20**: There is no evidence Defendant Ashcraft received or read Plaintiff's letter of October 6, 2022. [Exhibit G, ¶ 3, 4].

    **Response**: Disputed. The letters were sent to Defendant Ashcraft and submitted to the Administrative Review Board, suggesting receipt within the facility's system. [Exhibit D, Bates 000395-000396].

21. **UMF 21**: As Healthcare Unit Administrator, Defendant Ashcraft is not directly responsible for patient care and does not provide medical services. [Exhibit G, ¶ 5].

    **Response**: Plaintiff does not possess sufficient knowledge as to all of Defendant Ashcraft's job duties, but disputes that this absolves her of responsibility for patient care. As HCUA and former ADA Coordinator, Ashcraft had a duty to ensure Plaintiff's medical and disability-related needs were addressed. [See 42 U.S.C. § 12132; 28 C.F.R. § 35.130].

22. **UMF 22**: Defendant Ashcraft relies on and defers to licensed medical professionals to provide care for individuals in custody. [Exhibit G, ¶ 5].

    **Response**: Plaintiff does not possess sufficient knowledge to this statement, but disputes its legal significance. Ashcraft's reliance on medical professionals does not absolve her of responsibility for ensuring timely and adequate accommodations for Plaintiff's disability. [See 42 U.S.C. § 12132].

23. **UMF 23**: Plaintiff testified that he "might have" spoken to Defendant Kestner one time sometime between October 2022 and February 2023. [Exhibit B, pp. 37:21-39:8].
    **Response**: Plaintiff disputes this statement. Plaintiff explicitly states that, "I talked to Kestner face-to-face." [Exhibit B, p. 37:21]
24. **UMF 24**: Defendant Kestner does not recall ever speaking to Plaintiff. [Exhibit H, ¶ 2].
    **Response**: Plaintiff does not possess enough knowledge as to know what Defendant Kestner retains in his memory and therefore cannot not respond. If a response is required, Plaintiff disputes this statement.
25. **UMF 25**: Defendant Kestner relies on and defers to licensed medical professionals to provide care for individuals in custody. [Exhibit H, ¶ 3].
    **Response**: Admitted, but disputed as to its legal significance. As ADA Coordinator, Kestner had a duty to ensure Plaintiff received appropriate accommodations for his hearing disability. [See 42 U.S.C. § 12132].
26. **UMF 26**: Defendant Greene is not a medical professional and relies on and defers to licensed medical professionals to provide care for individuals in custody. [Exhibit F, ¶ 12].
    **Response**: Admitted, but disputed as to its legal significance. As Warden, Greene had a supervisory responsibility to ensure Plaintiff's constitutional rights were not violated. [See *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996); See also *Gentry v. Duckworth*,65 F.3d 555, 561 (7th Cir.1995)].

## II. PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

Pursuant to Local Rule 56.1(b)(3)(C), Plaintiff submits the following additional material facts that demonstrate genuine issues of material fact precluding summary judgment:

1. Plaintiff's severe hearing loss (100% in the left ear and 70-80% in the right ear) constitutes a serious medical need and a disability under the Americans with Disabilities Act (ADA). [Exhibit B, p. 25:6-7; 42 U.S.C. § 12102(1)(A)].

2. Plaintiff's broken hearing aid, upon his arrival at Western Illinois Correctional Center in June 2022, rendered him unable to hear critical instructions, announcements, and communications, significantly impacting his daily activities and safety. [Exhibit B, pp. 26:16-25; 27: 1-25].

3. When Plaintiff entered in Western Illinois Correctional Center, he only possessed his old hearing aid, which was not in proper work order.

4. Upon arrival to Western Illinois Correctional Center, due to a delay in response, Plaintiff was forced to wait 90 days to be checked for his disability. [Exhibit B, pp. 30:8-14;17-25; 33:2-17].

5. Due to his inability to hear and fully participate in daily life while in custody, Plaintiff began to file grievances on June 22, 2022 to improve his conditions. [Exhibit B, p. 29:18-23].

6. Of those dates filed, Plaintiff filed grievances on October 4 and 7, 2022, specifically requesting accommodations, including functional hearing aids, to address his hearing disability. [Exhibit B, pp, 32:18; 33:1-25; 34:1-13;Exhibit C, Bates 000368].

7. Plaintiff sent letters to Defendants Greene and Ashcraft on October 6, 2022, explicitly requesting accommodations for his hearing disability, which were submitted to the Administrative Review Board, indicating they were received by the facility. [Exhibit D, Bates 000392-000396; 000409-000410].

8. The communication plan completed on November 1, 2022, and the provision of a vibrating watch and headphones did not fully address Plaintiff's hearing disability, as they did not restore his ability to hear verbal instructions or engage in normal communication. Furthermore, on this same day, Plaintiff requested a "Hard of Hearing" request to be placed on his cell door, which was not placed until months later. [Exhibit B, pp. 44:10-15;45:5-8; Bates 000039-000041].

9. Plaintiff did not receive hearing aids until September 24, 2024, nearly two and a half years after first requesting them, [Exhibit B, p. 47:18-23].

10. The audiologist's attempt to repair Plaintiff's hearing aid on November 29, 2022, was unsuccessful, and the recommendation for a hearing evaluation was not acted upon until February 21, 2023, a delay of nearly three months, in which Plaintiff had already been transferred to a different wing nearly a week prior. [Exhibit E, Bates 000044, 000056, Exhibit B, Bates 47:6-25, 54:1-18, 51:2-15]

11. On or about February 17, 2023, Plaintiff sent in a request for additional support of audio hearing medical accommodation. [Exhibit E, Bates 000054, Exhibit B, Bates 53:11-25].

12. It was not until February 21, 2023 that Plaintiff was recommended for a Hearing Aids Evaluation, which was administered on February 23, 2023. After this evaluation, it was determined that new hearing aids should be administered, to which Plaintiff expected to receive in May 2023. Unfortunately, this did not occur due to a lockdown. [Exhibit E, Bates 000056, 000011; Bates 000373, Exhibit B, Bates 54:1-18 ]

13. Since being unable to receive the hearing aids in May, Plaintiff missed out again because the audiologist was not due to return to the facility until August or September of 2023, but before the audiologist return, Plaintiff was transferred to a different facility [East Moline]. [Exhibit A, Bates 000423, Exhibit E, Bates 000011, Exhibit B, Bates 64:2-23].

14. Plaintiff was transferred to East Moline on August 16, 2023. On August 25, 2023, Defendants claim to have accommodated Plaintiff's request of attaching a "Hard of Hearing" sign to his cell door, but at this time, he'd already been transferred to East Moline from Western for over a week and a half. [Exhibit A, Bates 000423 Exhibit E, Bates 000014; Bates 000383, Exhibit B, Bates 62:3-25]

15. The delay in providing a hearing evaluation and new hearing aids exacerbated Plaintiff's difficulties in navigating the prison environment, including missing critical announcements and instructions, which posed risks to his safety and access to services.

[Exhibit I, ¶ 6]. [Exhibit E, Bates 000067; Bates 000380, 000385, 000411, Exhibit B, Bates 33:3-23]

16. Defendant Ashcraft, as HCUA and former ADA Coordinator, was responsible for overseeing the provision of accommodations for inmates with disabilities, including ensuring timely medical evaluations and equipment. [Exhibit G, ¶¶ 1, 2; 28 C.F.R. § 35.130, Exhibit B, Bates 76-77, 39:3-8]

17. Defendant Kestner, as ADA Coordinator starting February 27, 2023, had a duty to ensure Plaintiff's disability accommodations were met, including following up on the audiologist's recommendation for new hearing aids. [Exhibit H, ¶ 1; 28 C.F.R. § 35.130 Exhibit B, Bates 37:21, 62:3-17].

18. Defendant Greene, as Warden, had supervisory authority over the facility and was responsible for ensuring that inmates' constitutional and statutory rights, including those under the ADA and Eighth Amendment, were upheld. [*Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996); <u>See</u> <u>also</u> *Gentry v. Duckworth*,65 F.3d 555, 561 (7th Cir.1995)]. [Exhibit F, ¶ 1; 28 C.F.R. § 35.130, Exhibit B, Bates 70-72]

19. Plaintiff experienced emotional distress and frustration due to the lack of functional hearing aids, which hindered his ability to participate in prison programs and communicate effectively. [Exhibit I, ¶ 7]. [Exhibit E, Bates 000067; Bates 000380, 000385, 000389]

## III. ARGUMENT

Defendants' Motion for Summary Judgment should be denied because genuine issues of material fact exist regarding Defendants' personal involvement, deliberate indifference to Plaintiff's serious medical needs, and violations of the ADA. Additionally, Defendants are not entitled to qualified immunity.

### A. Genuine Issues of Material Fact Exist Regarding Defendants' Personal Involvement

Defendants argue that Plaintiff cannot demonstrate their personal involvement in the alleged constitutional violations. However, Plaintiff has presented evidence creating genuine issues of material fact. Under 42 U.S.C. § 1983, personal involvement is established when an official knows of a constitutional violation and fails to take reasonable steps to prevent it. *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) <u>See</u> <u>also</u> *Gentry v. Duckworth*,65 F.3d 555, 561 (7th Cir.1995)( where the court found that where the inmate claimed that his right of access to the courts was violated because he was denied scribe materials. He sent the superintendent many letters concerning his claims; they went unanswered. This court determined, upon examination of the pleadings in that particular case, that it was a reasonable construction of the inmate's pled facts to conclude that the superintendent knew of the denial of scribe materials because of the prisoner's "many letters" to him, and that, as a matter of policy, the superintendent had ignored these requests for redress). Here, Plaintiff sent letters to Defendants Greene and Ashcraft on October 6, 2022, requesting accommodations for his hearing disability, which were submitted to the Administrative Review Board, suggesting receipt within the facility's system. [Exhibit D, Bates 000395-000396]. The Defendants' declarations that

they did not personally receive or read the letters do not negate the possibility that their subordinates, acting under their authority, received and failed to act on them. See *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988) (supervisory liability exists where officials fail to correct systemic deficiencies).

Moreover, Plaintiff filed grievances on October 4 and 7, 2022, which were received by the facility and should have alerted Defendants to his needs. [Exhibit C, Bates 000368]. The denial of these grievances as moot was improper, as the communication plan and vibrating watch did not fully address Plaintiff's hearing loss. [Exhibit I, ¶ 5]. Defendant Greene, as Warden, and Defendant Ashcraft, as HCUA and former ADA Coordinator, had supervisory responsibilities to ensure Plaintiff's needs were met. Defendant Kestner, as ADA Coordinator, had a direct responsibility to address Plaintiff's disability accommodations after February 27, 2023. [28 C.F.R. § 35.130]. Plaintiff's testimony that he "might have" spoken to Kestner further raises a factual dispute about her involvement. [Exhibit B, pp. 37:21-39:8].

**B. Defendants Were Deliberately Indifferent to Plaintiff's Serious Medical Needs**

To establish deliberate indifference under the Eighth Amendment, Plaintiff must show (1) a serious medical need and (2) that Defendants knew of and disregarded an excessive risk to his health. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff's severe hearing loss (100% in one ear and 70-80% in the other) is a serious medical need, as it significantly impaired his ability to function in the prison environment. [Exhibit B, pp. 25:6-7, 26:16-27:25]. Defendants do not dispute the severity of Plaintiff's condition. [UMF 5, 6].

Plaintiff has presented evidence that Defendants were aware of his condition through his grievances and letters but failed to ensure timely provision of functional hearing aids. The delay from November 29, 2022 (when the audiologist recommended a hearing evaluation) to February 21, 2023 (when the evaluation occurred) constitutes a genuine issue of material fact regarding deliberate indifference. [Exhibit E, Bates 000044, 000056]. This delay exacerbated Plaintiff's difficulties, including missing critical instructions and experiencing emotional distress. [Exhibit I, ¶¶ 6-7]. While Defendants provided a vibrating watch and headphones, these measures were insufficient to address Plaintiff's inability to hear verbal communications. [Exhibit I, ¶ 5]. See *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (delay in treatment that exacerbates injury or prolongs suffering may constitute deliberate indifference).

**C. Defendants Violated the Americans with Disabilities Act**

Plaintiff also alleges violations of Title II of the ADA, which prohibits public entities from denying qualified individuals with disabilities the benefits of services, programs, or activities. 42 U.S.C. § 12132. Plaintiff's hearing loss qualifies as a disability under the ADA. [42 U.S.C. § 12102(1)(A)]. Defendants Ashcraft and Kestner, as ADA Coordinators, and Greene, as Warden, had a duty to ensure Plaintiff received reasonable accommodations. The failure to provide functional hearing aids in a timely manner denied Plaintiff equal access to prison services, such as communication with staff and participation in programs. [Exhibit I, ¶¶ 5-7]. The vibrating watch and headphones, while helpful, did not fully accommodate Plaintiff's needs, creating a genuine issue of material fact regarding ADA compliance.

**D. Defendants Are Not Entitled to Qualified Immunity**

Defendants' claim of qualified immunity fails because Plaintiff's rights under the Eighth Amendment and ADA were clearly established at the time of the violations. The right to timely medical treatment for serious medical needs is well-established. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Similarly, the right to reasonable accommodations under the ADA for inmates with disabilities is clearly established. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). A reasonable official would have understood that failing to provide functional hearing aids for a severely hearing-impaired inmate violates these rights. Moreover, factual disputes regarding Defendants' knowledge and actions preclude qualified immunity at this stage. See *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment. Genuine issues of material fact exist regarding Defendants' personal involvement, deliberate indifference, and ADA violations. Defendants are not entitled to qualified immunity.

Dated: June 17, 2025

Respectfully submitted,

/s/ Juneitha Shambee

Juneitha Shambee
Attorney for Plaintiff Marcus Craig
Shambee Law Office, Ltd.
701 Main St., Ste. 201A
Evanston, IL., 60202
773-741-3602
juneitha@shambeelaw.com
ARDC: 6308145