E-FILED
Tuesday, 01 July, 2025 04:33:39 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MARCUS CRAIG, #M01293,<br><br>Plaintiff,<br><br>vs.<br><br>WEXFORD HEALTH SOURCES, INC., BRITTANY GREENE, ADA COORDINATOR, CATHY ASHCRAFT AND ADA COORDINATOR KESTNER, In their official capacities,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 23-cv-3343-DJQ |

**<u>DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>**

Now Come Defendants, CATHY ASHCRAFT, BRITTANY GREENE and KINDEL KESTNER, by and through their attorney, Kwame Raoul, Attorney General of the State of Illinois, and hereby file the Reply in Support of their Motion for Summary Judgment [d/e 29], stating as follows:

**Introduction**

In his Response, Plaintiff argues that genuine issues of material fact exist as to Defendants' personal involvement, whether Defendants were deliberately indifferent, and whether Defendants violated the ADA. In addition, Plaintiff argues that Defendants are not entitled to qualified immunity. However, Plaintiff has failed to create a genuine issue of material fact with regard to Defendants' personal involvement, Defendants were not deliberately indifferent because they saw that Plaintiff was getting treatment for his hearing loss, and the ADA is not at issue in this case. Finally, Defendants are entitled to qualified immunity because they did not violate Plaintiff's clearly established rights.

**Response to Plaintiff's Statement of Additional Material Facts[1]**

1. Plaintiff's severe hearing loss (100% in the left ear and 70-80% in the right ear) constitutes a serious medical need and a disability under the Americans with Disabilities Act (ADA). [Exhibit B, p. 25:6-7[2]; 42 U.S.C. § 12102(1)(A)].

**RESPONSE: Undisputed and material that Plaintiff's severe hearing loss constitutes a serious medical need. Undisputed and immaterial that Plaintiff's hearing loss constitutes a disability under the ADA because the ADA is not at issue in this case.**

2. Plaintiff's broken hearing aid, upon his arrival at Western Illinois Correctional Center in June 2022, rendered him unable to hear critical instructions, announcements, and communications, significantly impacting his daily activities and safety. [Exhibit B, pp. 26:16-25; 27:1-25].

**RESPONSE: Undisputed and immaterial because Plaintiff was given assistive devices and seen for new hearing aids.**

3. When Plaintiff entered in Western Illinois Correctional Center, he only possessed his old hearing aid, which was not in proper work [sic] order.

**RESPONSE: Undisputed and immaterial because Plaintiff was given assistive devices and seen for new hearing aids.**

[1] Facts deemed undisputed are undisputed for the purposes of summary judgment only.

[2] Plaintiff's response refers to Defendants' exhibits by letter rather than docket number. Defendants will continue to use Plaintiff's wording in the Additional Facts section, but will refer to the docket numbers in their response to Plaintiff's Additional Facts.

4. Upon arrival to Western Illinois Correctional Center, due to a delay in response, Plaintiff was forced to wait 90 days to be checked for his disability. [Exhibit B, pp. 30:8-14; 17-25; 33:2-17].

**RESPONSE: Undisputed and immaterial because any delay in treatment did not exacerbate Plaintiff's hearing loss.**

5. Due to his inability to hear and fully participate in daily life while in custody, Plaintiff began to file grievances on June 22, 2022, to improve his conditions. [Exhibit B, p. 29:18-23].

**RESPONSE: Disputed. Plaintiff did not testify in the cited portion of his deposition, nor anywhere else, that he started filing grievances on June 22, 2022. [d/e 29-2, p. 8 at 29:18-23]. Plaintiff's grievance log shows that he did not file any grievances while at Western before October 2022. [d/e 29-3 at Bates 000368]. Immaterial because the first grievances filed concerning Plaintiff's hearing loss were filed in October 2022. [*Id.*].**

6. Of those dates filed, Plaintiff filed grievances on October 4, and 7, 2022, specifically requesting accommodations including functional hearing aids, to address his hearing disability. [Exhibit B, pp. 32:18; 33:1-25; 34:1-13; Exhibit C, Bates 000368].

**RESPONSE: Undisputed and immaterial because treatment is at the discretion of IDOC physicians and medical staff.**

7. Plaintiff sent letters to Defendants Greene and Ashcraft on October 6, 2022, explicitly requesting accommodations for his hearing disability, which were submitted to the Administrative Review Board, indicating they were received by the facility. [Exhibit D, Bates 000392-000396; 000409-000410].

**RESPONSE: Undisputed that Plaintiff wrote letters on October 6, 2022, requesting accommodations for his hearing disability. Disputed that Plaintiff submitting copies of those letters to the Administrative Review Board indicates they were received by the facility. There is no stamp, mark, signature, response, or anything else to indicate they were received by the facility. [*See* d/e 29-4, Bates 000392-000396; 000409-000410]. Immaterial because, generally, writing a letter to an individual is not enough in itself for a person to be held liable for a constitutional violation. *See, e.g., Volk v. Coler*, 638 F. supp 1540, 1549 (C. D. Ill. July 8, 1986) aff'd, 845 F. 2d 1422 (7th Cir. 1988) (letters are insufficient to create personal involvement); *Wagner v. McCann*, 2011 WL 3205352 at *5 (N.D. Ill. July 27, 2011) (a single letter is "insufficient for personal liability to attach").**

8. The Communication plan completed on November 1, 2022 and the provision of a vibrating watch and headphones did not fully address Plaintiff's hearing disability, as they did not restore his ability to hear verbal instructions or engage in normal communication. Furthermore, on this same day, Plaintiff requested a "Hard of Hearing" request to be placed on his cell door, which was not placed until months later. [Exhibit B, pp. 44:10-15; 45:5-8; Bates 000039-000041].

**RESPONSE: Objection, these facts violate Central District Local Rule 7.1(D)(2)(b)(5) as it contains multiple facts rather than one discrete material fact and they are not supported by specific citation to the record. The cited portions of Plaintiff's deposition transcript do not support the assertions made in the above paragraph and are merely Plaintiff testifying to the**

**assistive devices Plaintiff received. [d/e 29-2, pp. 11 at 44:10-15; 12 at 45:5-8]. The cited portion of Plaintiff's medical records is a communication plan completed with Plaintiff on November 1, 2022, that indicates Plaintiff's ability to communicate is "fair" and no special conditions are needed. [d/e 29-5, Bates 000039-000041]. To the extent a response is required, it is undisputed and material that Plaintiff completed a communication plan on November 1, 2022, and received a vibrating watch and headphones. It is disputed that these devices did not alleviate Plaintiff's hearing issues. [d/e 29-2, p. 17 at 67:22-25]. It is immaterial that these devices did not fully alleviate Plaintiff's hearing issues because a reasonable response precludes a finding of deliberate indifference. *See Rasho v. Jeffreys,* 22 F. 4th 703, 710 (7th Cir. 2022) ("Evidence that the defendant responded reasonably to the risk, even if he was ultimately unsuccessful in preventing the harm, negates an assertion of deliberate indifference"). It is undisputed and immaterial that Plaintiff requested hard of hearing on his door because he had assistive devices and hard of hearing on his ID badge.**

9. Plaintiff did not receive hearing aids until September 24, 2024, nearly two and a half years after first requesting them. [Exhibit B, p. 47:18-23].

**RESPONSE: Undisputed and immaterial because Plaintiff was transferred from Western on August 16, 2023, and Plaintiff received treatment for his hearing loss, including testing for new hearing aids, and other assistive devices while at Western.**

10. The audiologist's attempt to repair Plaintiff's hearing aid on November 29, 2022, was unsuccessful, and the recommendation for a hearing evaluation was not acted upon until February 21, 2023, a delay of nearly three months, in which Plaintiff had already been transferred to a different wing nearly a week prior. [Exhibit E, Bates 000044, 000056, Exhibit B, pp. 47:6-25, 54:1-18, 51:2-15].

**RESPONSE: Objection, these facts violate Central District Local Rule 7.1(D)(2)(b)(5) as it contains multiple facts rather than one discrete material fact is included. To the extent that a response is required, undisputed and immaterial that it took three months for Plaintiff to receive a hearing evaluation because the delay did not exacerbate Plaintiff's hearing loss. Undisputed and immaterial Plaintiff was transferred to a different wing because what wing of the facility Plaintiff was housed in is not relevant.**

11. On or about February 17, 2023, Plaintiff sent in a request for additional support of audio hearing medical accommodation. [Exhibit E, Bates 000054, Exhibit B, p. 53:11-25].

**RESPONSE: Objection, this fact violates Central District Local Rule 7.1(D)(2)(b)(5) as it is not supported by specific citation to the record. The cited portions of Plaintiff's deposition transcript do not support the assertions made in the above paragraph and are merely Plaintiff describing the document cited to from Exhibit E [d/e2 9-5]. [d/e 29-2, p. 14 at 53:11-25]. That document is a Medical Services Referral and Report filled out by two doctors, not a request made by Plaintiff. [d/e 29-5, Bates 000054]. To the extent that a response is required, it is disputed and immaterial that Plaintiff sent in a request for additional accommodation because he was seen on February 21, 2023, for a hearing evaluation. [*Id.*].**

12. It was not until February 21, 2023 that Plaintiff was recommended for a Hearing Aids Evaluation, which was administered on February 23, 2023. After this evaluation, it was determined that new hearing aids should be administered, to which Plaintiff expected to receive in May 2023. Unfortunately, this did not occur due to a lockdown. [Exhibit E, Bates 000056, 000011; Bates 000373; Exhibit B, p. 54:1-18].

**RESPONSE: Regarding the fact that Plaintiff's hearing evaluation was conducted on February 23, 2023, this fact violates Central District Local Rule 7.1(D)(2)(b)(5) as it contains multiple facts rather than one discrete material fact and is not supported by specific citation to the record. The cited portions of Plaintiff's deposition transcript do not support the assertions made in the above paragraph, and in fact contradict it, with Plaintiff confirming that he received an audiogram on February 21. [d/e 29-2, p. 14 at 54:15-18]. Of the cited documents, Bates 000056 confirms again that Plaintiff's hearing evaluation was completed on February 21, 2023, and new hearing aids were recommended. [d/e 29-5, Bates 000056]. To the extent a response is required, this fact is disputed and immaterial. It is undisputed and immaterial that Plaintiff expected to receive new hearing aids in May 2023, but wasn't able to due to a lockdown, because any delay in receiving hearing aids did not exacerbate Plaintiff's hearing loss and Plaintiff had other assistive devices.**

13. Since being unable to receive hearing aids in May, Plaintiff missed out again because the audiologist was not due to return to the facility until August or September of 2023, but before the audiologist return [sic], Plaintiff was transferred to a different facility [East Moline]. [Exhibit A, Bates 000423, Exhibit E, Bates 000011, Exhibit B, p. 64:2-23].

**RESPONSE: Undisputed and immaterial that Plaintiff was transferred to East Moline on August 16, 2023 because any delay in receiving hearing aids did not exacerbate Plaintiff's hearing loss and Plaintiff had other assistive devices.**

14. Plaintiff was transferred to East Moline on August 16, 2023. On August 25, 2023, Defendants claim to have accommodated Plaintiff's request of attaching a "Hard of Hearing" sign to his cell door, but at this time, he'd already been transferred to East Moline from Western for over a week and a half. [Exhibit A, Bates 000423; Exhibit E, Bates 000014; Bates 000383, Exhibit B, p. 62:3-25].

**RESPONSE: Undisputed and immaterial because Plaintiff had "hard of hearing" on his ID badge as well as other assistive devices.**

15. The delay in providing a hearing evaluation and new hearing aids exacerbated Plaintiff's difficulties in navigating the prison environment, including missing critical announcements and instructions, which posed risks to his safety and access to services. [Exhibit I, ¶ 6]. [Exhibit E, Bates 000067; Bates 000380, 000385, 000411, Exhibit B, p. 33:3-23].

**RESPONSE: This fact violates Central District Local Rule 7.1(D)(2)(b)(5) as it is not supported by specific citation to the record. The cited portions of Plaintiff's deposition transcript do not support the assertions made in the above paragraph and are merely Plaintiff reading from a letter that he wrote before receiving assistive devices, including a vibrating watch and headphones, which helped him with his issue of missing calls. [d/e 29-2,**

**pp. 9 at 33:3-23; 17 at 67:22-25]. Bates 000380 is a grievance that Plaintiff wrote while at Robinson Correctional Center which is not relevant to the assistance Plaintiff received at Western. [Plaintiff's Exhibit A, Bates 000380]. Bates 000385 appears to be the second page of a grievance that has been separated from the first and therefore lacks a date and facility to identify it. [Plaintiff's Exhibit A, Bates 000385]. Bates 000411 is again a letter that was written before Plaintiff received his assistive devices. [Plaintiff's Exhibit A, Bates 000411]. Bates 000067 is two mental health request slips made on May 25 and June 5, 2022, both dates are before Plaintiff was transferred to Western and therefore irrelevant. [d/e 29-5, Bates 000067]. To the extent that a response is required, the above facts are disputed and immaterial because even though Plaintiff didn't have hearing aids, he had other assistive devices which alleviated his hearing issues. [d/e 29-2, p. 17 at 67:22-25].**

16. Defendant Ashcraft, as HCUA and former ADA Coordinator, was responsible for overseeing the provision of accommodations for inmates with disabilities, including ensuring timely medical evaluations and equipment. [Exhibit G, ¶¶ 1, 2; 28 C.F.R. § 35.130, Exhibit B, Bates 76-77, 39:3-8].

**RESPONSE: Undisputed that Defendant Ashcraft was HCUA and ADA Coordinator and, as ADA Coordinator, was responsible for overseeing the provision of accommodations for individuals in custody with disabilities and immaterial because she saw that Plaintiff was receiving treatment for his hearing disability. With regard to the assertion that Defendant's responsibilities included "ensuring timely medical evaluations and equipment," this fact violates Central District Local Rule 7.1(D)(2)(b)(5) as it is not supported by specific citation to the record. The cited portions of Plaintiff's deposition transcript do not support the assertions made in the above paragraph and are merely Plaintiff describing interacting with**

**Defendant Ashcraft and describing, in his own words, why he is suing Defendant Ashcraft. [d/e 29-2, pp. 10 at 39:3-8; 19 at 76:3-15]. The cited portion of Defendant Ashcraft's declaration merely states what her positions were for the relevant time frame. [d/e 29-7, ¶¶ 1, 2]. The cited portion of the Code of Federal Regulations is merely a general prohibition against discrimination against people with disabilities. [28 C.F.R. § 35.130]. To the extent a response is required, it is disputed that Defendant Ashcraft was responsible for individuals in custody receiving timely treatment as she did not provide treatment to patients. [d/e 29-7, ¶ 5]. It is immaterial because Defendant Ashcraft saw that Plaintiff was receiving treatment.**

17. Defendant Kestner, as ADA Coordinator Starting February 27, 2023, had a duty to ensure Plaintiff's disability accommodations were met, including following up on the audiologist's recommendation for new hearing aids. [Exhibit H, ¶ 1; 28 C.F.R. § 35.130; Exhibit B, pp. 37:21, 62:3-17].

**RESPONSE: It is undisputed that Defendant Kestner had a duty to ensure Plaintiff was receiving reasonable accommodations for his disability and immaterial because she saw that he was. Regarding the assertion that Defendant Kestner had a duty to follow up on the audiologist's recommendation for new hearing aids, this fact violates Central District Local Rule 7.1(D)(2)(b)(5) as it is not supported by specific citation to the record. The cited portions of Plaintiff's deposition transcript do not support the assertions made in the above paragraph and are merely Plaintiff stating he talked to Defendant Kestner face to face and reading from a grievance response regarding Plaintiff requesting a hard of hearing plaque for his cell door. [d/e 29-2, pp. 10 at 37:21; 16 at 62:3-17]. The cited portion of Defendant Kestner's declaration merely states what her position was for the relevant time frame. [d/e 29-8, ¶ 1]. The cited portion of the Code of Federal Regulations is merely a general**

**prohibition against discrimination against people with disabilities. [28 C.F.R. § 35.130]. To the extent a response is required, it is disputed that Defendant Kestner had a duty to follow up on the audiologist's recommendation for new hearing aids because she does not provide treatment to patients. [d/e 29-8, ¶ 3]. It is immaterial because Plaintiff was supposed to receive hearing aids in May 2023 but could not because of a lockdown. By the next time Plaintiff could have received hearing aids, he had already been transferred from Western.**

18. Defendant Greene, as Warden, had supervisory authority over the facility and was responsible for ensuring that inmates' constitutional and statutory rights, including those under the ADA and Eighth Amendment, were upheld. [*Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996); *See also Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)]. [Exhibit F, ¶ 1; 28 C.F.R. § 35.130; Exhibit B, Bates 70-72].

**RESPONSE: Undisputed and immaterial because a supervising prison official cannot incur liability under § 1983 unless she is shown to be personally responsible for a deprivation of a constitutional right. *Vance v. Peters*, 97 F. 3d 987, 992 (7th Cir. 1996).**

19. Plaintiff experienced emotional distress and frustration due to the lack of functional hearing aids, which hindered his ability to participate in prison programs and communicate effectively. [Exhibit I, ¶ 7]. [Exhibit E, Bates 000067; Bates 000380, 000385, 000389].

**RESPONSE: Undisputed and immaterial because Plaintiff received assistive devices which helped to alleviate these problems.**

## Argument

### I. Plaintiff has failed to create a genuine issue of material fact regarding Defendants' personal involvement

Plaintiff relies on several cases, each of which is distinguishable, to support his claim that there exists a genuine issue of material fact as to Defendants' personal involvement. Plaintiff also

claims that the fact that he submitted his letters to the Administrative Review Board somehow proves that these letters were received by the facility. However, there are no stamps, signatures, responses, or other markings indicating that the letters were received and there is no record of Defendants having received them. UMF 18, 20; [d/e 29-4, Bates 000392-000396; 000409-000410].

Plaintiff argues that even if Defendants did not personally receive or read Plaintiff's letters, it does not negate the possibility that their subordinates, acting under their authority, received and failed to act on them. However, this argument misses the mark as it relies on Defendants as supervisors being responsible for the actions of their subordinates. *See Jones v. Chicago*, 856 F. 2d 985, 992 (7th Cir. 1988) (noting that "supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable" under § 1983). Plaintiff relies on *Jones* for the proposition that supervisory liability exists where officials fail to correct systemic deficiencies. However, aside from the fact that *Jones* does not state this, Plaintiff has failed to plead or show any systemic deficiencies that Defendants are allegedly responsible for. Even assuming *arguendo* Defendants' staff received and ignored Plaintiff's letters, this does not amount to a systemic issue.

Plaintiff compares the present case to *Gentry v. Duckworth*, 65 F. 3d 555 (7th Cir. 1995). However, this case is distinguishable. In that case, the Court found that the fact that the plaintiff had sent "many letters" which had gone unanswered, coupled with the continued denial or scribe materials, amounted to a policy of the supervisory defendant "at least to the level of turning a blind eye." *Id.* at 561 (internal quotation omitted). The Court noted that "the question is close" and also noted it was reading the plaintiff's summary judgment response "more generously" because the plaintiff was *pro se*. *Id.* This case is distinguishable because Plaintiff only wrote one letter each to Defendants Ashcraft and Greene and because Plaintiff here had the benefit of counsel in

responding to the summary judgment motion. Therefore, this close question should go the other way.

Further, even if there is a genuine issue of fact as to whether Defendants received Plaintiff's letters, it is immaterial because one letter to a Defendant is not sufficient to establish personal liability. *See, e.g., Hadley v. Peters*, 841 F. Supp. 850, 860 (C. D. Ill. Jan. 25, 1994).

**II. Defendants were not indifferent to Plaintiff's serious medical need**

Plaintiff does not present any case law in support of his argument that Defendants were deliberately indifferent and instead relies entirely on the delay between November 29, 2022, when the audiologist recommended a hearing evaluation, and February 21, 2023, when the evaluation occurred, to create a genuine issue of fact as to deliberate indifference. However, this misses the mark for a few reasons. First, as explained more fully in Defendants' Motion for Summary Judgment, they saw that Plaintiff was receiving reasonable treatment for his hearing loss and this precludes a finding of deliberate indifference. Second, assuming *arguendo* this three month "delay" amounts to deliberate indifference, there is no evidence that Defendants were aware of the delay. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (Defendants must know of and disregard an excessive risk to Plaintiff's health) (emphasis added). Any issues regarding whether Defendants actually received and read Plaintiff's letters aside, those letters and the Plaintiff's grievances were written in October 2022. After that, Defendants saw that Plaintiff was getting treatment, including a communication plan on November 1, 2022, a vibrating watch, headphones, and a visit with the audiologist on November 29, 2022. Plaintiff's October grievances were signed by Defendant Greene on November 29, 2022. After that, the next grievance that Plaintiff wrote was not until July 19, 2023. So even assuming Defendants personally received and reviewed Plaintiff's letters and grievances, they would have only seen that he was getting proper treatment and therefore could

not be called deliberately indifferent. Finally, even if Defendants are responsible for a three-month delay between Plaintiff receiving a recommendation for a hearing evaluation and the hearing evaluation taking place, they cannot be said to have been deliberately indifferent because it did not exacerbate Plaintiff's hearing loss. *See Arnett v. Webster*, 658 F. 3d 742, 753 (7th Cir. 2011) ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain").

**III. The ADA does not apply to this action**

Plaintiff also argues that Defendants' actions constitute violations of the ADA. However, on merit review, the Court only allowed Plaintiff to proceed on one count for deliberate indifference. [Text Order of September 25, 2024]. Therefore, any claims under the ADA are not relevant to this action.

**IV. Defendants are entitled to qualified immunity**

Plaintiff argues that Defendants' claim of qualified immunity fails because the rights they allegedly violated were clearly established at the time of the alleged violations. However, Plaintiff has done nothing to point to a closely analogous case that establishes he had a right to be free from the specific conduct alleged to violate the general constitutional right as issue. *See Rice v. Burks*, 999 F. 2d 1172, 1174 (7th Cir. 1993). Further, as argued more fully in Defendants' Motion for Summary Judgment, it was not clearly established that Defendants' actions or omissions constitute violations of Plaintiff's Eighth Amendment rights at the time of the alleged violations.

WHEREFORE Defendants respectfully request this honorable Court grant their Motion for Summary Judgment and enter judgment in their favor and against Plaintiff.

Respectfully submitted,

KATHY ASHCRAFT, BRITTANY GREENE and KINDEL KESTNER,

Defendants,

KWAME RAOUL, Illinois Attorney General,

Attorney for Defendants,

By: s/Evan CreelGould
Evan CreelGould #6335737
Assistant Attorney General

Evan CreelGould #6335737
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
(773) 590-7875 Phone
(217) 524-5091 Fax
Email: evan.creelgould@ilag.gov
& gls@ilag.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MARCUS CRAIG, #M01293,<br><br>Plaintiff,<br><br>vs.<br><br>WEXFORD HEALTH SOURCES, INC., BRITTANY GREENE, ADA COORDINATOR, CATHY ASHCRAFT AND ADA COORDINATOR KESTNER, In their official capacities,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 23-cv-3343-DJQ |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 1, 2025, I electronically filed the **Defendants' Reply in Support of their Motion for Summary Judgment** with the Clerk of Court using the CM/ECF system, which sent notice to the following:

Juneitha Shambee: juneitha@shambeelaw.com

Respectfully Submitted,

<u>s/Evan CreelGould</u>
Evan CreelGould #6335737
Assistant Attorney General
500 S. Second Street
Springfield, IL 62701
Phone: (773) 590-7875
Fax: (217) 524-5091
Email: evan.creelgould@ilag.gov
& gls@ilag.gov