E-FILED
Monday, 05 January, 2026 02:28:21 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MARCUS CRAIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:23-cv-3343-DJQ |
| | ) | |
| BRITTANY GREENE, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Plaintiff, then proceeding *pro se*, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment claim for deliberate indifference to a serious medical need. The matter comes before this Court for ruling on the Defendants' Motion for Summary Judgment. (Doc. 29). The motion is granted.

### I.  FACTS

Plaintiff was incarcerated at Western Illinois Correctional Center ("Western") from June 22, 2022, through August 16, 2023. UMF 1. Defendants worked at the facility in the following capacities: Defendant Greene was the warden; Defendant Ashcraft was the Healthcare Unit Administrator and served as the facility's Americans with Disabilities Act (ADA) coordinator until February 27, 2023; and, Defendant Kestner was the ADA coordinator from February 27, 2023, through the end of the relevant period. (Doc. 29 at 2; UMF 2-4). Defendants do not provide medical treatment to inmates. (Doc. 29-6 at 3, ¶ 12); (Doc. 29-7 at 2, ¶ 5); (Doc. 29-8 at 1, ¶ 3).

Plaintiff is deaf in his left ear and suffers between 70-80% hearing loss in his right ear. (Doc. 29 at 2; UMF 5). He wears hearing aids to assist with hearing, and, without them, he is unable to hear instructions from officers and notifications regarding movement within the prison, including gym, yard, meals, and the law library. (Doc. 29 at 2; UMF 6). When his incarceration began, officials at Stateville Correctional Center ("Stateville") told Plaintiff, "[w]hen you get to your parent facility, they'll take care of [the hearing aids]." Pl.'s Dep. 29:21-23.

Upon his arrival at Western, Plaintiff possessed one broken hearing aid. (Doc. 29 at 3; UMF 7). During a physical conducted shortly after his arrival at Western, a physician told Plaintiff to submit a request slip regarding his hearing, and "then, we'll get you over and then…figure it out…from there." Pl.'s Dep. 31:2-16. Plaintiff submitted multiple request slips to healthcare officials over the next two months to no avail. *Id.* 30:3-25. The medical records do not disclose that medical staff saw Plaintiff for any issue between his arrival and early November 2022. (Doc. 29-5 at 1-2). Plaintiff's intake form from the date of his arrival notes that he has hearing aids without indication that they were not functioning. *Id.* at 1.

Plaintiff submitted two grievances regarding his hearing that officials received on October 4 and 7, 2022, respectively. (Doc. 29 at 3; UMF 8). The record does not disclose a grievance dated on or before October 4, 2022. Plaintiff provided copies of a grievance dated October 6, 2022, that indicates that he had filed it as an emergency. (Doc. 36 at 9, 13) (Plaintiff checked appropriate box to indicate request for emergency review); *see also* Pl.'s Dep. 57:4-7 (Plaintiff filed at least one grievance as an emergency).

2

As relevant here, grievances marked as emergencies are forwarded directly to the Chief Administrative Officer (CAO), typically the warden, for a determination regarding whether the issues warrant expedited review. 20 Ill. Admin. Code § 504.840. The grievance Plaintiff provided as an exhibit stated that he is deaf and hard of hearing, that he had attempted to contact Defendant Ashcraft for 90 days regarding this issue, and that he has missed gym, yard, commissary, and call passes for medical care. (Doc. 36 at 9, 13). He requested "to be moved into a Deaf and [Hard of Hearing] Cell, Koss C-L 20 headphones, a Casio watch, a pager watch. Hearing Aid." *Id.*

The copies of Plaintiff's October 6, 2022, grievance do not contain a response from Western officials. *Id.* (no counselor's response or checkmark and signature indicating that the request for emergency review had been considered). According to the grievance logs, Defendant Greene granted Plaintiff's requests for the grievances received on October 4 and 7, 2022, to be handled on an emergency basis on the dates the grievances were received and directed grievance officials to conduct an expedited review. (Doc. 29-3 at 1); Pl.'s Dep. 56:24-57:11. After investigation, Defendant Greene concurred with the grievance officer's recommendation that the grievances were moot on November 29, 2022. (Doc. 29-3 at 1); Pl.'s Dep. 58:16-22; 60:4-11.

Plaintiff also sent letters dated October 6, 2022, to Defendants Greene and Ashcraft. (Doc. 29-4 at 1-2). The letters informed these Defendants that he was hearing impaired, that he had attempted to contact the ADA coordinator for over 90 days to get a communication plan, and that the lack of accommodations resulted in several missed meals, gym, commissary, call passes, sick call, and law library. *Id.* Plaintiff also stated

3

that he is unable to attend college classes without a hearing aid. *Id.* File stamps on the letters indicate that the Administrative Review Board[1] received them on October 25, 2022, and again on March 13, 2023. *Id.* Defendants Greene and Ashcraft deny receiving these letters. (Doc. 29-6 at 2, ¶¶ 9-10); (Doc. 29-7 at 1, ¶¶ 3-4).

Plaintiff testified that he spoke in person with Defendant Ashcraft about these issues during sick calls and at some point "after October [2022]." Pl.'s Dep. 39:12-41:14. He spoke with Defendant Kestner face-to-face "in between October and February." *Id.* 38:19-20. Plaintiff also spoke with Defendant Greene in person approximately five or six times on dates Plaintiff does not remember. *Id.* 74:4-75:14.

Plaintiff completed a communication plan on November 1, 2022. (Doc. 29 at 3; UMF 10). On the same day, Defendant Ashcraft provided Plaintiff with a MMCall vibrating watch designed to alert Plaintiff to calls for movement within the facility. (Doc. 29 at 3; UMF 11). The communication plan also indicates that Plaintiff had "hearing disability" marked on his ID card and that he had requested a "hearing impaired" notification on his cell. (Doc. 29-5 at 42).

On November 12, 2022, officials issued Plaintiff a pair of CL/20 headphones, and, on November 29, 2022, Plaintiff met with an audiologist who attempted to fix his broken hearing aid. (Doc. 29 at 3; UMF 14, 15). The audiologist recommended a hearing evaluation for new hearing aids. (Doc. 29 at 4; UMF 16).. The prison physician requested

---

[1] The Administrative Review Board (ARB) reviews appeals of grievances that cannot be resolved at the facility via the counselor, grievance officer, and CAO. Under the rules, an inmate unhappy with a grievance officer's and CAO's responses may appeal by forwarding the responses to the ARB. 20 Ill. Admin. Code § 504.850. Under some circumstances not applicable here, the grievance rules require an inmate to send a grievance directly to the ARB. *See id.* § 504.870(a).

approval for the hearing aids on November 30, 2022. (Doc. 29-5 at 50). Officials at

Wexford Health Sources, Inc. ("Wexford"), the private company contracted at the time

to provide medical services within Illinois prisons, approved the recommendation same

day. *Id.* at 49.

On February 17, 2023, the prison physician requested a repeat audiogram before

dispensing new hearing aids. *Id.* at 54. An audiogram conducted February 21, 2023,

disclosed "moderate to profound" hearing loss in Plaintiff's right ear and "severe to

profound" hearing loss in Plaintiff's left ear. *Id.* at 54-56. Plaintiff did not receive hearing

aids while incarcerated at Western. (Doc. 33 at 5; AMF 9).. He attributes this to the

facility medical director's failure to respond to the request for same. Pl.'s Dep. 54:3-25.

Defendant Ashcraft provided Plaintiff with a VibraLITE 3 watch[2] on March 29,

2023. (Doc. 29-5 at 57). She issued Plaintiff a new MMCall Vibrating watch on April 21,

2023. *Id.* at 58. Defendant Kestner responded to a grievance Plaintiff filed in July 2023

that he was on the list to see the audiologist in September 2023 and that "hard of

hearing" had been placed on Plaintiff's cell door on August 23, 2023. Pl.'s Dep. 62:12-17.

Plaintiff had been transferred to East Moline Correctional Center approximately one

week earlier. (Doc. 29 at 2; UMF 1).

---

[2] Plaintiff testified that the watch he received on November 12, 2022, was a "pager watch," also known as a "tactile notification system." Pl.'s Dep. 44:22-45:4. Plaintiff testified that the pager watch is different from the vibrating watch, but the record does not otherwise disclose the difference between the two watches Plaintiff received. Pl.'s Dep. 45:1-4.

5

## II.  LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. ANALYSIS

As a threshold matter, Plaintiff asserts in his summary judgment response that Defendants violated his rights under the Americans with Disabilities Act (ADA). (Doc. 33 at 6-8).  The Court held pursuant to 28 U.S.C. § 1915A that Plaintiff's amended complaint stated only a claim under the Eighth Amendment. (9/25/2024 Text Order). The Court did not find that Plaintiff stated a claim under the ADA. *Id.* Plaintiff did not seek reconsideration of that order or seek leave to file a second amended complaint adding that claim. To the extent that Plaintiff now seeks to amend his complaint to include the new claim, the Court finds that Defendants did not have fair notice of the ADA claim, and the request is denied. *Ollison v. Gossett*, 136 F.4th 729, 739 (7th Cir.

2025) (affirming district court's refusal to consider claims raised in summary judgment response where defendants did not have fair notice of the claims).

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. *Id.* at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). Non-medical prison personnel may be held liable under the Eighth Amendment if they intentionally deny or delay access to medical care or intentionally interfere with treatment once prescribed. *Estelle*, 429 U.S. at 105. The parties do not dispute that Plaintiff suffered from an objectively serious medical need.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

A plaintiff may not hold an official liable under § 1983 just because that official may have been in charge. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (no *respondeat superior*

7

liability under § 1983); *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Liability [under § 1983] depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise."). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). An inmate's written correspondence to prison officials may be sufficient to "establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015); *Diggs v. Ghosh*, 850 F.3d 905, 911 (7th Cir. 2017) (prisoner told the warden "that [the prisoner] was waiting on surgery and had a painful knee injury."); *Vance*, 97 F.3d at 993 (prisoner must demonstrate "that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to [a constitutional deprivation].").

Plaintiff testified that prison officials told him to submit requests to healthcare officials regarding his hearing issues, and the record does not disclose that Defendants would have known about those requests or that they were responsible for scheduling sick call appointments. Because the medical records disclose no sick call appointments between his arrival at Western and November 1, 2022, the record does not support an inference that Plaintiff's face-to-face meetings with Defendant Ashcraft occurred prior to the dates he submitted his October grievances and sent letters to her and Defendant Greene or that Defendants were otherwise aware of Plaintiff's issues. Plaintiff testified

that he did not inform Defendant Kestner of same before he sent this correspondence. Pl.'s Dep. 36:18-37:4 (Plaintiff did not know who Defendant Kestner was until several months after he had sent the October 2022 letters).

The parties dispute whether Defendants Greene and Ashcraft received Plaintiff's letters. The letters contain no indicia that Western officials received them as part of Plaintiff's grievances, and Plaintiff could have sent them directly to the Administrative Review Board without involving Western officials.[3] Assuming these defendants received Plaintiff's letters on the date Plaintiff presumably sent them, Defendant Greene had already directed officials to investigate Plaintiff's issues on an expedited basis per his October 4, 2022, grievance. A day after Plaintiff sent the letter, she directed expedited review of Plaintiff's October 7, 2022, grievance.

Defendant Greene was entitled to delegate this task to her subordinates. As the Seventh Circuit explained in *Burks*:

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen.

---

[3] Plaintiff's letters to Defendants Greene and Ashcraft contain file stamps from the ARB for the same dates as the October 6, 2022, grievances Plaintiff provided. *Compare* (Doc. 29-4 at 1-2), *with* (Doc. 36 at 9, 13). The short period between the date of Plaintiff's grievance and the date on the file stamps suggest that Plaintiff sent copies of the grievance and letters directly to the ARB in addition to submitting the grievance at the facility.

555 F.3d at 595. The record does not disclose that Defendant Greene knew that grievance officials would unnecessarily delay review of Plaintiff's grievances, much less that they did. Defendant Ashcraft thereafter provided medical devices to assist with Plaintiff's issues, and Plaintiff had access to the medical providers responsible for addressing his concerns regarding hearing aids.

Once they had assured medical staff was addressing Plaintiff's complaints, Defendants Greene, Ashcraft, and Kestner were entitled to defer to the judgment of the medical staff providing treatment without fear of liability. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (nonmedical prison officials "are entitled to defer to the judgment of jail health professionals" so long as the inmate's complaints are not ignored (citations omitted)); *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (no deliberate indifference where nonmedical prison official investigated inmate's complaints and referred then to medical providers who could be expected to address the concerns); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (no deliberate indifference where nonmedical prison official referred inmate complaints to medical providers). Plaintiff attributed the failure to receive hearing aids following his February 2023 audiogram to a non-defendant physician's failure to approve them. Nothing in the record suggests that Defendants were involved in this decision or that they contributed to any delay Plaintiff thereafter experienced. The record does not support an inference that the delay exacerbated Plaintiff's underlying conditions or that the failure to provide the medical devices Plaintiff requested resulted in other constitutional injury. *Williams*

*v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007) (plaintiff must show that the delay, not the underlying condition, caused some degree of harm).

The record does not support a reasonable inference that Defendants were responsible for any constitutional deprivation Plaintiff suffered or that Defendants acted with deliberate indifference. The Court finds that no reasonable juror could conclude that Defendants violated Plaintiff's Eighth Amendment rights.

**IT IS THEREFORE ORDERED:**

1.  Defendants' Motion for Summary Judgment [29] is GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated. Plaintiff remains responsible for the $350.00 filing fee.

2.  If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.

**ENTERED** this 5th day of January, 2026.

*s/Douglas J Quivey*
DOUGLAS J. QUIVEY
UNITED STATES MAGISTRATE JUDGE